JUSTICE RICE,
dissenting.
¶42 On first glance, the Court’s analysis of the distinction between the *532 two actions to avoid the application of res judicata seems viable. Yet, a closer inspection of how these two cases were actually pled and tried convinces me that res judicata should apply.
¶43 The Court concludes that Olsen “could not have technically presented the issues in the former case as he does now.” Opinion, ¶ 25. A comparison of Olsen’s pleadings in the two actions indicates he essentially did so. The following are quotes:
1. Olsen’s Answer/Counterclaim in Case #1:
Milners had a boundary line adjustment survey conducted .... Milners, knowing the property line, built an addition onto [their lot] that abuts the property line. This violates the City of Libby’s Ordinance 17.12.060 that states Tt]he minimum width of any side yard shall be seven feet...”
Olsen’s Complaint in Case #2:
Defendants [Milners] surveyed and staked the boundary line between the properties for the purpose of constructing an addition onto their home. ... Defendants built the addition in violation of the city setback requirement....
2. Olsen’s Answer/Counterclaim in Case #1:
[T]he addition’s roof slopes towards Olsen’s property. ... [T]he snow falling from Milnors’ [sic] roof during the winter of 2007/2008 caused Olsen’s shed to collapse.... Milnors [sic] also had the roof pitch so the snow would fall onto Olsen’s property. In other words, the eaves ran parallel to Olsen’s property.... [T]he snow fell off the Milnors’ [sic] roof and onto Olsen’s property.
Olsen’s Complaint in Case #2:
Defendants built the addition ... in such a manner that the eves from the addition are on or cross the property boundary. Snow from the eves sheds onto Olsen’s property.... During the winter of 2007-2008, snow slid off of Defendants’ new addition and caved in Olsen’s shed.
3. Relief requested by Olsen in Answer/Counterclaim in Case #1:
That the Court rescind the Contract and return the parties to their original positions ... That the Court require Milnors [sic] to build a snow break on their roof that will prevent the snow from falling onto Olsen’s property ... That the Court award Defendant [Olsen] its damages [for conversion] ....
Relief requested by Olsen in Complaint in Case #2:
By permitting snow shedding from their new addition and by placing the addition so close to the property line, Defendants allowed a nuisance to exist.... Plaintiff is entitled to an abatement of the nuisance as well as damages .... Plaintiff is entitled to an *533 order [for trespass] enjoining Defendants from maintaining their addition in a location too close to or across the property boundary line.
¶44 Olsen sought damages under a conversion theory in Case #1 and under nuisance and trespass theories in Case #2. He sought injunctive relief requiring Milners to modify their property in both cases. The Court, in distinguishing the actions, notes that Olsen’s survey was completed after the first suit, and reasons that Olsen “was not aware of the trespass claim” at the time of the first suit. Opinion, ¶ 25. However, Olsen’s claims in the second case were not explicitly premised upon the survey, but rather upon Milners maintaining their addition “too close to or across” the property line fin violation of the city setback requirement,” similar to his claims in the first case. More importantly, if Olsen was not aware of the potential trespass during the first case, he should have been. The boundary line was not only put into play by Olsen in the first case, but he based his request for relief on it. The burden of knowing where the line was located should be imputed to him.
¶45 The Court further reasons that Olsen did not have “possessory rights” in the disputed strip of land until it was deeded back to him after the first case. Opinion, ¶ 25. However, Olsen claimed such rights during the first case, seeking damages from Milners for allowing snow to fall “onto Olsen’s property,” and seeking injunctive relief requiring Milners to alter their building to broadly “prevent the snow from falling onto Olsen’s property”-not merely to avoid damaging his shed. Olsen sought not only to reclaim the property by a rescission of the contract, but he also sought relief based upon the assumption that he held possessory rights to it and that he would own it outright if rescission was ordered. Although he sought recovery under different theories in each case, Olsen’s claims were fundamentally identical in both-fehe issues were the same. To the extent there was some variation in the claims, Olsen had the opportunity to litigate all his claims in the first action.
¶46 Olsen was denied damages and denied injunctive relief in the first case. He did not appeal. In the second case he repackaged similar claims under new theories and obtained both damages and the injunctive relief he was denied in the first case. I would apply res judicata and reverse.